IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PNC BANK, N.A., | * |
| Plaintiff, | * |
| v. | *    Civil No. RDB-20-2922 |
| BALSAMO AND NORINO PROPERTIES, LLC, *et al.*, | * |
| | * |
| Defendants. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

PNC Bank, N.A. ("PNC" or "Plaintiff"), a federally chartered national banking association, brought this action for interpleader, pursuant to 28 U.S.C. § 1335 and Rule 22(a)(1) of the Federal Rules of Civil Procedure, to determine the proper disposition of account proceeds of two deposit accounts. (ECF No. 1.) According to PNC, the two accounts were originally established in August of 2009 and September of 2016 by Defendant Balsamo and Norino Properties, LLC ("BNP"), a two-member LLC owned by Defendants John Zorzit ("Zorzit") and Joseph Balsamo ("Balsamo"). (*Id.*) Defendants BNP and Zorzit have moved to dismiss this action, arguing that this Court lacks subject matter jurisdiction over the matter and that the Plaintiff has failed to state a plausible claim for relief. (ECF No. 15.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Defendants' Motion to Dismiss (ECF No. 15) is DENIED.

## **BACKGROUND**

1

In ruling on a motion to dismiss, this Court "accept[s] as true all well-ple[d] facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff PNC Bank is a federally chartered national banking association with its home office in Delaware. (ECF No. 1 ¶ 1.) BNP is a two-member LLC in Maryland. (*Id.* ¶ 2.) Zorzit and Balsamo are BNP's two members, and each individual resides in Maryland. (*Id.* ¶¶ 3-4.)

On November 18, 1998 Zorzit and Balsamo signed the Articles of Organization to create BNP, identifying themselves as the only two members of the LLC, both with 50% ownership. (*Id.* ¶ 8.) The Articles of Organization also identified the purpose of BNP as real estate investment. (*Id.* ¶ 9.) Zorzit was designated as the "managing member" of the LLC, "the sole authorized representative of the Company in all business matters." (*Id.* ¶ 10.) Plaintiff PNC alleges that to its knowledge, the Articles of Organization have not been materially modified since the formation of BNP. (*Id.*)

On or about August 19, 2009, BNP created an account with PNC Bank. (*Id.* ¶ 11.) The account number ends in -2466, and Zorzit, Balsamo, and Balsamo's son were each designated as signatories to the account. (*Id.*) At the time BNP created this account, the company disclosed Zorzit and Balsamo's respective membership interests to PNC. (*Id.*)

Relations between Zorzit and Balsamo began to deteriorate, and on July 27, 2012, Balsamo filed suit against Zorzit. *See* Case No. 03-C-12-007741 (Circuit Court for Baltimore County). On March 4, 2015, after a fifteen-day bench trial, Judge Finifter of the Circuit Court for Baltimore County entered Findings of Fact and Conclusions of Law. (ECF No. 1 ¶ 13.)

Judge Finifter denied Balsamo's request for judicial dissolution of BNP, as well as his claims that Zorzit had breached his fiduciary duties to the company. (*Id.*) Judge Finifter then ordered an independent accounting and a retitling of more than $14 million in assets in Balsamo's favor. (*Id.*) The court also awarded Balsamo attorneys' fees for the recovered assets in the amount of $816,393.43. (*Id.*) Finally, Judge Finifter also entered a Declaratory Judgment Order confirming that Balsamo was a 50% owner of BNP. (*Id.* ¶ 14.) The Maryland Court of Special Appeals affirmed Judge Finifter's findings and conclusions. (*Id.* ¶ 13.)

For more than two years following Judge Finifter's decision, the parties continued to engage in various post-judgment disputes. (*Id.* ¶ 14.) As the parties continued to litigate their ongoing disagreements, BNP opened a second account with PNC, with an account number ending in -6419. (*Id.* ¶ 15.) Zorzit was designated as the sole signatory on this account. (*Id.*) In a "Certificate in Lieu of Operating Agreement," Zorzit identified himself as the "only member" of BNP. (*Id.*) Additionally, the Account Registration and Agreement stated that BNP was a "single-member LLC." (*Id.*)

In February 2020, Balsamo allegedly stated to personnel at the Joppa Road branch of PNC Bank that he was a 50% owner of BNP, and that the 6419 account had been opened without his knowledge. (*Id.* ¶ 17.) He then asserted an ownership interest in the account of 50% as a member of the BNP LLC. (*Id.*) PNC placed a hold on the 6419 account pending resolution of an apparent dispute between members of the BNP LLC regarding authority over the account. (*Id.* ¶ 18.) Balsamo allegedly agreed that this was the appropriate action for the bank to take at that time. (*Id.*)

On or about February 27, 2020, Zorzit signed a form Certification provided by PNC, identifying both himself and Balsamo as 50% beneficial owners of BNP. (*Id.* ¶ 19.) PNC alleges, however, that Balsamo did not represent to PNC that this Certification constituted a full resolution of his objection related to the 6419 account. (*Id.*) PNC also alleges that around this time, Zorzit's counsel stated to Balsamo's counsel that it was Plaintiff PNC that had made a mistake in creating the 6419 account with Zorzit as the only asserted member of the LLC. (*Id.*)

On March 11, 2020, counsel for Balsamo sent a letter to PNC stating that he objected to the manner in which the 6419 account had been opened by Zorzit without his knowledge. (*Id.* ¶ 20.) The letter requested documents and information related to the 6419 account. (*Id.*) PNC claims that it understood this letter to mean that Balsamo continued to dispute the manner in which the 6419 was created and his rights in the account, and, accordingly, PNC left the hold in place. (*Id.*)

On June 1, 2020, Balsamo's son visited the Wilkens Avenue branch of PNC Bank. (*Id.* ¶ 22.) As noted above, Balsamo's son was a signatory on the 2466 account. (*Id.*) Balsamo's son told PNC personnel that he did not want Zorzit to transact in the 2466 account and, therefore, asked the bank to require two signatures on any checks and the authorization of two authorized agents of BNP to take any action with respect to the account. (*Id.*) PNC alleges that it told Balsamo's son that such restrictions could not be placed on the account. (*Id.*) Balsamo's son then asked the bank to place a hold on the 2466 account. (*Id.*)

On July 13, 2020 Zorzit filed suit against PNC in the Circuit Court for Baltimore County asserting claims arising from the holds placed on the 6419 and 2466 accounts. *See*

*Balsamo and Norino Properties, LLC v. PNC Bank, NA*, No. 24-C-20-002976 OT (Circuit Court for Baltimore County). PNC removed the action to federal court where it remains pending. *See* No. RDB-20-2425 (D. Md.).[1] On September 17, 2020, representatives of PNC corresponded with Zorzit and Balsamo, asking them for unconditional clarification as to the members' intentions with respect to the authority to transact in both accounts. (ECF No. 1 ¶ 25.) According to PNC, Zorzit and Balsamo have not yet reached an agreement such that unconditional clarification can be provided to the bank as to who the authorized signatories of the accounts will be. (*Id.* ¶ 26.) Given this alleged ongoing dispute, PNC filed the Complaint in this case, seeking to have the parties resolve their respective rights in the accounts through judicial process. (*Id.*) As of September 30, 2020, the balance in the 2466 account is $232,209.91. (*Id.* ¶ 27.) The balance in the 6419 account is $84,557.95. (*Id.*)

Pursuant to 28 U.S.C. § 1335 and Rule 22(a)(1) of the Federal Rules of Civil Procedure, Plaintiff PNC seeks orders from this Court to allow the net proceeds of the 2466 and 6419 accounts to be deposited into the registry of the Court, so that the Court may conduct appropriate proceedings to determine the proper disposition of the account proceeds. (*Id.* ¶ 38.) On November 18, 2020, Defendants BNP and Zorzit filed the presently pending Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1335 and that because the Plaintiff has not pled facts sufficient to show it would be subject to double or multiple liability if interpleader were not allowed. (ECF No. 15.)

**STANDARD OF REVIEW**

---

[1] This other pending matter remains in discovery. This Court granted a motion to vacate the operative scheduling order in that other matter, pending potential mediation of this case. (RDB-20-2425, ECF No. 30.)

**I.      Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

**II.     Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions

6

be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I. This Court has subject matter jurisdiction.

"'Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund.'" *Legacy Inv. & Mgmt., LLC v. Susquehanna Bank*, No. WDQ-12-2877, 2013 WL 5423919, at *4 (D. Md. Sept. 26, 2013) (quoting *Sec. Inc. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F. App'x 767, 769 (4th Cir. 2002)).  Interpleader may be brought in federal court under either the Federal Interpleader Act, 28 U.S.C. § 1335, or under Rule 22 of the Federal Rules of Civil Procedure.  Section 1335 creates what is known as statutory interpleader.  The statute provides a district court with original jurisdiction over interpleader actions in which a "person, firm, or corporation, association, or society" has custody over "money or property of the value of $500 or more" and there are two or more adverse claimants to the contested fund that are diverse in citizenship as defined by 28 U.S.C. § 1332.  *See* 28 U.S.C. § 1335.  Meanwhile, rule interpleader is based on Rule 22 of the Federal Rules of Civil Procedure.  Under Rule 22, "[p]ersons having

7

claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22(1). "Rule 22 interpleader actions must fall within one of the statutory grants of federal jurisdiction, such as diversity jurisdiction." *See Canal Ins. Co. v. Partee*, No. WDQ-06-3330, 2007 WL 9780545, at *2 (D. Md. Oct. 18, 2007); (citing 28 U.S.C. § 1332 (2000)); *see also Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993). "[T]hus, in contrast to section 1335, which focuses on the diversity of the claimant-defendants, Rule 22 (per section 1332) requires diversity between the plaintiff-stakeholder and the claimants." *See Commercial Union*, 999 F.2d at 584 (citing Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §§ 1702, 1704, at 493-500 (2d ed. 1986)).

Defendants BNP and Zorzit assert that PNC's Complaint should be dismissed for lack of subject matter jurisdiction, arguing that because PNC does not allege it is a claimant to the bank accounts at issue, PNC is not an "adverse claimant" under § 1335 in this matter, and its citizenship should not be considered for purposes of determining subject matter jurisdiction. (ECF No. 15 at 4.)  It is undisputed that Plaintiff-Stakeholder PNC is a citizen of Delaware, and all three Defendant-Claimants are citizens of Maryland.  If PNC's citizenship is irrelevant to the diversity inquiry under § 1335, the statute cannot provide a basis for original subject matter jurisdiction in this case.

Plaintiff PNC asserts that it should in fact be considered an "adverse claimant" for purposes of determining this Court's jurisdiction under § 1335 of the Interpleader Act. (ECF No. 23 at 5.)  However, as the bank aptly notes, this Court need not address that issue at this time. (*Id.*)  The Plaintiff has clearly asserted interpleader claims under § 1335, as well as Rule

22. The moving Defendants did not address this Court's jurisdiction pursuant to Rule 22 in their Motion to Dismiss, and they do not dispute that PNC, as the stakeholder in this matter, is diverse from all three identified claimants. Given that rule interpleader requires diversity between only the stakeholder and the claimants, this Court has subject matter jurisdiction under Rule 22.

## II. Plaintiff PNC has stated a plausible claim for relief under Rule 22.

"Rule 22 allows a party (often referred to as the 'stakeholder') to file a claim for interpleader when confronted with "claims that may expose [the party] to double or multiple liability." *J.G. Wentworth Originations, LLC v. Mobley*, ELH-11-1406, 2012 WL 4922862, at *5 (D. Md. Oct. 12, 2012). Specifically, interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *See* 7 Wright, Miller, & Kane, *Federal Practice & Procedure* § 1704, at 540-41 (3d ed. 2001); s*ee also Equitable Life Ins. Soc. v. Jones*, 679 F.2d 356, 358 n. 2 (4th Cir. 1982).

The moving Defendants argue that to the extent PNC is pursuing this action under Rule 22(a)(1), the Complaint fails to state a claim upon which relief can be granted because PNC has not pled how it could be subject to double or multiple liability regarding the accounts at issue. (ECF No. 15 at 5.) However, PNC clearly alleges that it asked BNP and the members of the LLC, Zorzit and Balsamo, to provide "unconditional clarification as to the members' intentions with respect to authority to transact in both accounts." (ECF No. 1 ¶ 25.) The Complaint continues, noting that "[s]pecifically, PNC Bank inquired whether it was the intention of the members that Mr. Zorzit would alone be authorized to transact in the

9

accounts, or if Mr. Zorzit and Mr. Balsamo would both be so authorized." (*Id.*)  PNC alleges that Zorzit and Balsamo have been unable to provide such instructions and that their claims are hostile, conflicting, and mutually exclusive.  (*Id.* ¶¶ 26, 36.)  If PNC were to lift the holds on each of the disputed accounts, the bank runs the risk of allowing transactions authorized by one member and disputed by the other.  Plaintiff PNC has stated a plausible claim for relief under Rule 22.

## CONCLUSION

For these reasons, Defendant BNP and Zorzit's Motion to Dismiss (ECF No. 15) is DENIED.

A separate Order follows.

Dated: June 16, 2021

                                                            /s/
                                                 Richard D. Bennett
                                                 U.S. District Judge